Alex R. Straus (SBN 321366)
**WHITFIELD BRYSON LLP**
16748 McCormick Street
Los Angeles, CA 91436
(917) 471-1894 (phone)
(615) 921-6501 (fax)
astraus@whitfieldbryson.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAMIE ESTES and SHAWN REGAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLACKBAUD, INC.,<br><br>Defendant. | CASE NO. 2:20-cv-8275<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. NEGLIGENCEY**<br>**2. INVASION OF PRIVACY**<br>**3. BREACH OF EXPRESS CONTRACT**<br>**4. BREACH OF IMPLIED CONTRACT**<br>**5. NEGLIGENCE *PER SE***<br>**6. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code § 17200, *et seq.***<br>**7. VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT, CA CIVIL § 1798.100, *et seq*.** |

## <u>CLASS ACTION COMPLAINT</u>

1.     Plaintiffs, Mamie Estes and Shawn Regan, individually and on behalf of all others similarly situated, bring this action against Defendant Blackbaud, Inc. ("Blackbaud" or "Defendant") to obtain damages, restitution, and injunctive relief

for the Class, as defined below, from Defendant.  Plaintiffs make the following allegations upon information and belief, except as to their own actions, the investigation of his counsel, and the facts that are a matter of public record.

## **NATURE OF THE ACTION**

2.      This class action arises out of the May of 2020, ransomware attack and data breach ("Data Breach") of several schools, healthcare, non-profit companies, and other organizations (collectively "Clients") whose data and servers were managed, maintained, and secured by Blackbaud.  The Clients' data and servers contained identifying, sensitive, and personal data from students, patients, donors, and other individual users, including Plaintiffs. As a result of the Data Breach, Plaintiffs and thousands of other Class Member users suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.  Additionally, Plaintiffs and Class Members' sensitive personal information—which was entrusted to Defendant, its officials, and agents—was compromised and unlawfully accessed due to the Data Breach.  Information compromised in the Data Breach included a copy of a subset of information retained by Blackbaud, including names, addresses, phone numbers, and other personal information. True and accurate copies of the notice of data breach emailed to Plaintiffs (collectively "Notice") are attached hereto, and Defendant's exemplar Notice is available on its website.[1] Contrary to

[1] https://www.blackbaud.com/securityincident (Last Accessed August 12, 2020).

the representations in the Notices regarding the type of accessed information, it is believed based on statements by Defendant's Clients directing Class Members to monitor suspicious activity of their credit and accounts, that in addition to Social Security Numbers, credit card numbers, bank account numbers, and additional personally identifiable information (collectively "Private Information") may also have been compromised.

3.      Plaintiffs bring this class action lawsuit on behalf of those similarly situated, in order to: (1) address Defendant's inadequate safeguarding of Class Members' Private Information, which Defendant managed, maintained, and secured; (2) for failing to provide timely and adequate notice to Plaintiffs and other Class Members that their information had been subject to the unauthorized access of an unknown third-party; (3) for failing to identify all information that was accessed; and (4) for failing to provide Plaintiffs and Class Members with any redress for the Data Breach.

4.      Defendant maintained and secured the Private Information in a reckless manner, including, *inter alia*, failing to safeguard against ransomware attacks.  In particular, the Private Information was maintained on Defendant's computer network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiffs and Class Members' Private Information was a known risk to Defendant,

and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

5.      In addition, Defendant and their employees failed to properly monitor the computer network and systems that housed the Private Information; failed to implement appropriate policies to ensure secure communications; and failed to properly train employees regarding ransomware attacks.  Had Defendant properly monitored their network, security, and communications, it would have discovered the cyberattack sooner or prevented it altogether.  In fact, Blackbaud has announced it has  "already implemented changes to prevent this specific issue from happening again."[2]  In other words, had these changes been in place previously, this incident would not have happened and Plaintiffs and Class Members' Private Information would not have been accessed.

6.      Plaintiffs and Class Members' identities and Private Information are now at risk because of Defendant's negligent conduct as the Private Information that Defendant collected and maintained was in the hands of data thieves. Defendant cannot reasonably maintain that the data thieves destroyed the subset copy simply because Defendant paid the ransom and the data thieves confirmed the copy was destroyed.  In fact, the notices advise the affected individuals to monitor their own credit, suspicious account activity, and notify the school or non-profit of suspicious activity related to his or her credit.  Despite this, Defendant has not

[2] https://www.blackbaud.com/securityincident (Last Accessed August 12, 2020).

offered any manner of redress, including, *inter alia*, credit monitoring.

7.     Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, e.g., opening new financial accounts in class members' names, taking out loans in class members' names, using Plaintiffs and Class Members' names to obtain medical services, using class members' information to obtain government benefits, filing fraudulent tax returns using class members' information, obtaining driver's licenses in class members' names, but with another person's photograph, and giving false information to police during an arrest.

8.     As a result of the Data Breach, Plaintiffs and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft.  Plaintiffs and Class Members, at their own cost, must now and in the future closely monitor their financial accounts to guard against identity theft.

9.     Consequently, Plaintiffs and Class Members will also incur out of pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

10.     By their Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly-situated individuals, whose Private Information was accessed during the Data Breach.

11.     Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including

improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

12.    Accordingly, Plaintiffs bring this action against Defendant seeking redress for their unlawful conduct, and asserting claims for: (i) negligence; (ii) intrusion upon seclusion; (iii) negligence *per se*; (iv) breach of express contract; (v) breach of implied contract; and (vi) violations of state statutes.

## PARTIES

13.    Plaintiff Mamie Estes is a resident and citizen of Inglewood, Los Angeles County, California.

14.    Plaintiff Shawn Regan is a resident and citizen of San Pedro, Los Angeles County, California.

15.    Defendant Blackbaud is a Delaware corporation with its principal place of business located on Daniel Island, Charleston County, South Carolina.

16.    Defendant manages, maintains, and provides cybersecurity for the data obtained by its clients who are, *inter alia*, schools and non-profit companies, including Crystal Stairs, Inc., which maintained Plaintiffs' Private Information.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the

aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

18.  This Court has personal jurisdiction over this action because Defendant has sufficient minimum contacts with this District and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

19.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## **DEFENDANT'S BUSINESS**

20.  Since originally incorporating in New York in 1982,[3] Blackbaud has become "the world's leading cloud software company powering social good."  This includes providing its clients with "cloud software, services, expertise, and data intelligence…"  It is a publically traded company with clients that include "nonprofits, foundations, corporations, education institutions, healthcare institutions, and the individual change agents who support them."[4]

21.  In 2019, Blackbaud reported that it had "45,000 customers located in over 100 countries," with a "total addressable market (TAM)… greater than $10

---

[3] https://investor.blackbaud.com/static-files/9cd70119-4e13-4d47-b068-3c228c580417 (Last Accessed August 12, 2020).
[4] https://www.blackbaud.com/company (Last Accessed August 12, 2020).

billion."[5]

22.     In the ordinary course of doing business with Defendant's clients, individuals are regularly required to provide Defendant's clients with sensitive, personal and private information that is then stored, maintained, and secured by Defendant.  This information includes or may include:

- Name, address, phone number and email address;

- Date of birth;

- Demographic information;

- Social Security numbers;

- Credit card account numbers;

- Bank account numbers;

- Educational history;

- Healthcare information;

- Insurance information and coverage;

- Photo identification;

- Employer information;

- Donor contribution information; and

- Other information that may be deemed necessary to provide care.

---

[5] https://investor.blackbaud.com/static-files/9cd70119-4e13-4d47-b068-3c228c580417 (Last

23.    In its 2019 Annual Report, Blackbaud specifically addressed its known susceptibility to cyberattacks.  Specifically, the report states:

> ***If the security of our software is breached, we fail to securely collect, store and transmit customer information, or we fail to safeguard confidential donor data, we could be exposed to liability, litigation, penalties and remedial costs and our reputation and business could suffer.***
>
> Fundamental to the use of our solutions is the secure collection, storage and transmission of confidential donor and end user data and transaction data, including in our payment services. Despite the network and application security, internal control measures, and physical security procedures we employ to safeguard our systems, **we may still be vulnerable to a security breach, intrusion, loss or theft of confidential donor data and transaction data, which may harm our business, reputation and future financial results.** [Emphasis Added].
>
> Like many major businesses, we are, from time to time, a target of cyber-attacks and phishing schemes, and we expect these threats to continue. Because of the numerous and evolving cybersecurity threats, including advanced and persistent cyber-attacks, phishing and social engineering schemes, used to obtain unauthorized access, disable or degrade systems have become increasingly more complex and sophisticated **and may be difficult to detect for periods of time, we may not anticipate these acts or respond adequately or timely**... [Emphasis Added]…
>
> Further, the existence of vulnerabilities, even if they do not result in a security breach, may harm client confidence and require substantial resources to address, and we may not be able to discover or remedy such security vulnerabilities before they are exploited, which may harm our business, reputation and future financial results.[6]

24.    Because of the highly sensitive and personal nature of the information Defendant maintains, manages, and secures with respect to it clients and their users, Defendant has acknowledged to their clients and users that this information will be

---

[6] https://investor.blackbaud.com/static-files/9cd70119-4e13-4d47-b068-3c228c580417 (Last Accessed August 10, 2020).

comprehensively secured.

25.     Blackbaud's Privacy Policy North America ("Privacy Policy")
expressly applies as follows:

> At Blackbaud, we are committed to protecting your privacy. This Policy applies to Blackbaud's collection and use of personal data in connection with our marketing and provision of the Blackbaud Solutions, customer support and other services (collectively, the "Services"), for example if you are a customer, visit the website, interact with us at industry conferences, or work for a current or prospective customer of the Services.
>
> If you're a constituent, supporter, patient or student of one of our customers, to which we provide the Services, your data will be used in accordance with that customer's privacy policy. In providing the Services, Blackbaud acts as a service provider and thus, this Policy will not apply to constituents of our customers.[7]

26.     With regard to securing its constituents, supporters, patients or
students of one of Defendant's customers, Defendant further represents with regard
to the security of personal information:

> We restrict access to personal information collected about you at our website to our employees, our affiliates' employees, those who are otherwise specified in this Policy or others who need to know that information to provide the Services to you or in the course of conducting our business operations or activities. While no website can guarantee exhaustive security, we maintain appropriate physical, electronic and procedural safeguards to protect your personal information collected via the website. We protect our databases with various physical, technical and procedural measures and we restrict access to your information by unauthorized persons.

---

[7] https://www.blackbaud.com/company/privacy-policy/north-america (Last Accessed August 12, 2020).

We also advise all Blackbaud employees about their responsibility to protect customer data and we provide them with appropriate guidelines for adhering to our company's business ethics standards and confidentiality policies. Inside Blackbaud, data is stored in password-controlled servers with limited access.[8]

27.    Blackbaud has made additional commitments to the maintenance of student's private information. In April of 2015 with regard to its K-12 school providers, Defendant signed a pledge to respect student data privacy to safeguard student information.  The Student Privacy Pledge, developed by the Future of Privacy Forum (FPF) and the Software & Information Industry Association (SIIA), was created to "safeguard student privacy in the collection, maintenance and use of personal information."[9]

28.    In signing the Student Privacy Pledge, Blackbaud specifically represented to students and parents of its K-12 school providers that it would, *inter alia*, (1) "[m]aintain a comprehensive security program:" and (2) "[b]e transparent about collection and use of student data."[10]

29.    In further support of this representation and promise to student and parent users, Travis Warrant, president of Blackbaud's K-12 Private Schools Group, stated:

> Blackbaud is committed to protecting sensitive student data and security… The Pledge will better inform our customers, service providers and the general public of our dedication to protecting student

---

[8] *Id.*

[9] https://www.blackbaud.com/home/2015/04/22/blackbaud-signs-pledge-to-respect-student-data-privacy (Last Accessed August 12, 2020).

[10] *Id.*

privacy." The Pledge details ongoing industry practices that meet (and in some cases, exceed) all federal requirements, and encourages service providers to more clearly articulate their data privacy practices.[11]

30.    Despite such representations and promises, Defendant failed to adequately secure and protect numerous K-12 providers and thousands of students' Private Information, by allowing the Private Information to be copied and potentially used or sold at a later date.

31.    Further, due to the Health Information Portability and Accountability Act (HIPPA), Defendant had additional obligations to secure patient users' information for healthcare Clients.

32.    Defendant has further failed Plaintiffs and Class Members by failing to adequately secure and protect their Private Information, by allowing the Private Information to be copied and potentially used or sold at a later date.

33.    Defendant further failed Plaintiffs and Class Members by failing to adequately notify them of the ransomware attack or provide any remedy other than late notice.

## THE CYBERATTACK AND DATA BREACH

34.    Prior to the ransomware attack, clients, constituents, supporters, patients, and students provided sensitive and identifying Private Information to Blackbaud as part of, *inter alia*, seeking education from K-12 school providers and

---

[11] *Id.*

universities; seeking healthcare from healthcare providers; making donations to non-profit companies; and in other ways seeking services through Blackbaud's clients. When providing such information, these individuals had the expectation that Defendant, as the manager and securer of this Private Information, would maintain security against hackers and cyberattacks.

35.     Defendant maintained Plaintiffs and Class Members' Private Information on a shared network, server, and/or software. Despite its own awareness of steady increases of cyberattacks on health care, schools, and other facilities over the course of recent years, Defendant did not maintain adequate security of Plaintiffs and Class Members' data, to protect against hackers and cyberattacks.

36.     According to its own statements, in May of 2020, Defendant discovered a ransomware attack that attempted to "disrupt business by locking companies out of their own data and servers."[12]   According to Defendant's statements:

> After discovering the attack, our Cyber Security team—together with independent forensics experts and law enforcement—successfully prevented the cybercriminal from blocking our system access and fully encrypting files; and ultimately expelled them from our system. Prior to our locking the cybercriminal out, the cybercriminal removed a copy of a subset of data from our self-hosted environment. The cybercriminal did not access credit card information, bank account information, or social security numbers. Because protecting our customers' data is our top priority, we paid the cybercriminal's demand with confirmation that the copy they removed had been destroyed. Based on the nature of the incident, our research, and third party (including

---

[12] https://www.blackbaud.com/securityincident (Last Accessed August 12, 2020).

law enforcement) investigation, we have no reason to believe that any data went beyond the cybercriminal, was or will be misused; or will be disseminated or otherwise made available publicly… The subset of customers who were part of this incident have been notified and supplied with additional information and resources. We apologize that this happened and will continue to do our very best to supply help and support as we and our customers jointly navigate this cybercrime incident.[13]

37.    Upon information and belief, the ransomware attack began in February of 2020 and continued for approximately three months until it was stopped in May of 2020.

38.    Although Defendant claims that social security numbers, credit card information, or bank account information was not accessed, the Notices received by Plaintiffs informed them that their social security and/or tax identification information were in fact compromised during the Data Breach. Exhibits A and B.

39.    Defendant did not have a sufficient process or policies in place to prevent such cyberattack, which is evident by its own statements that it has "already implemented changes to prevent this specific issue from happening again."[14]

40.    Defendant cannot reasonably rely on the word of data thieves or "certificate of destruction" issued by those same thieves, that the copied subset of any Private Information was destroyed.  Further, upon information and belief, Defendant cannot be assured that in addition to Social Security numbers, Bank Account and Credit Card numbers were not also accessed and retained by the data

---

[13] *Id.*
[14] https://www.blackbaud.com/securityincident (Last Accessed August 12, 2020).

thieves. Defendant has failed to offer its clients or their users any remedy, including credit monitoring.

41.     Despite having knowledge of the attack since at least May of 2020, it is believed Defendant did not notify its affected clients until July or August of 2020 of the potentially compromised data.

42.     Defendant had obligations created by federal law, contracts, industry standards, common law, and privacy representations made to Plaintiffs and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

43.     Plaintiffs and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

44.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in its client's various industries preceding the date of the breach.

45.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack.[15]

---

[15] https://www.law360.com/consumerprotection/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (emphasis added) (Last Accessed August 12, 2020).

46.     The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including by Defendant's own admissions in its 2019 Annual Report.

47.     Defendant breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard Defendant's computer systems and data.  Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

      a.  Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

      b.  Failing to adequately protect patients' Private Information;

      c.  Failing to properly monitor their own data security systems for existing intrusions;

      d.  Failing to timely notify its Clients, Plaintiffs, and Class Members of the data breach; and

      e.  In other such ways to be discovered.

48.     As the result of Defendant's failure to take certain measures to prevent the attack until after the attack occurred, Defendant negligently and unlawfully failed to safeguard Plaintiffs and Class Members' Private Information.

49.     Accordingly, as outlined below, Plaintiffs and Class Members' daily lives were severely disrupted.  Now Plaintiffs and Class Members face an increased risk of fraud and identity theft.

## CYBERATTACKS AND DATA BREACHES CAUSE DISRUPTION AND PUT CONSUMERS AT AN INCREASED RISK OF FRAUD AND IDENTIFY THEFT

50.     Cyberattacks and data breaches of medical facilities, schools, and non-profit entities are especially problematic because of the disruption they cause to the overall daily lives of patients, students, donors, and other individuals affected by the attack.

51.     The United States Government Accountability Office released a report in 2007 regarding data breaches ("GOA Report") finding that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[16]

52.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (**consider an extended fraud alert that lasts for seven years** if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[17]

---

[16] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last visited Apr. 12, 2019) ("GAO Report").
[17] *See* https://www.identitytheft.gov/Steps (last visited April 12, 2019).

53.     Identity thieves use stolen Private Information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

54.     Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name, but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name. A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[18]

[GRAPHIC ON FOLLOWING PAGE]

---

[18] "Credit Card and ID Theft Statistics" by Jason Steele, 10/24/2017, at: https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php (last visited August 12, 2020).

Americans' expenses/disruptions as a result of criminal activity in their name (2016)

| | |
|---|---|
| I had to request government assistance | 29.5% |
| I had to borrow money | 60.7% |
| Had to use my savings to pay for expenses | 32.8% |
| Couldn't qualify for a home loan | 32.8% |
| I lost my home/place of residence | 31.1% |
| I couldn't care for my family | 34.4% |
| Had to rely on family/friends for assistance | 49.2% |
| Lost out on an employment opportunity | 44.3% |
| Lost time away from school | 19.7% |
| Missed time away from work | 55.7% |
| Was generally inconvenienced | 73.8% |
| Other | 23% |
| None of these | 3.3% |

Source: Identity Theft Resource Center                                    creditcards•com

55.     Private Information is a valuable property right.[19] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. This obvious risk to reward analysis illustrates that Private Information has considerable market value.

56.     It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs versus when it is discovered, and also between when Private Information and/or financial information is stolen and when

---

*See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

57.    Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

58.    There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, as the Notices advise, Plaintiffs and Class Members must vigilantly monitor their financial and medical accounts for many years to come.  *See* Exhibits A and B.

## **PLAINTIFFS' AND CLASS MEMBERS' DAMAGES**

59.    To date, Defendant has done nothing to provide Plaintiffs and Class Members with relief for the damages they have suffered as a result of the Data Breach including, but not limited to, the costs of credit monitoring, as well as costs and loss of time they incurred because of the stolen data.

60.    Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

61.    Plaintiffs' Private Information was compromised as a direct and proximate result of the Data Breach.   While the compromise of Plaintiffs' information was known as early as May of 2020, neither Ms. Estes nor Ms. Regan received a Notice until August 26, 2020.  Exhibits A and B.

62.    Like Plaintiffs, other Class Members' Private Information was compromised as a direct and proximate result of the Data Breach.

63.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

64.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been forced to expend time dealing with the effects of the Data Breach.

65.    Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

66.    Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private

Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiffs and Class Members.

67.     Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

68.     Plaintiffs and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

69.     Plaintiffs and Class Members have spent and will continue to spend significant amounts of time to monitor their financial, student, and medical accounts and records for misuse.

70.     Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach.  Like Plaintiffs, many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

      a.  Finding fraudulent charges;

      b.  Canceling and reissuing credit and debit cards;

      c.  Purchasing credit monitoring and identity theft prevention;

d.  Addressing their inability to withdraw funds linked to compromised accounts;

e.  Taking trips to banks and waiting in line to obtain funds held in limited accounts;

f.  Placing "freezes" and "alerts" with credit reporting agencies;

g.  Spending time on the phone with or at a financial institution to dispute fraudulent charges;

h.  Contacting financial institutions and closing or modifying financial accounts;

i.  Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

j.  Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

k.  Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

71.  Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing personal and financial information is not accessible online and that access to such data is password-protected.

72.  Further, as a result of Defendant's conduct, Plaintiffs and Class Members are forced to live with the knowledge that their Private Information—which contains the most intimate details about a person's life, may be disclosed to

the entire world, thereby subjecting them to embarrassment and depriving them of their right to privacy.

73.     As many of the purchasers of Private Information do not utilize the information for years, Plaintiffs and Class Members are forced for long periods of time to endure the fear of whether their information will be used.

74.     As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## CLASS ACTION ALLEGATIONS

75.     Plaintiffs brings this action on behalf of himself and on behalf of all other persons similarly situated ("the Class").

76.     Plaintiffs proposes the following Class definition, subject to amendment as appropriate:

> All persons in the State of California whose Private Information was compromised in the February through May of 2020 Data Breach described by Defendant at www.blackbaud.com/securityincident

Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

77.   <u>Numerosity</u>.  The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, based on information and belief, the class consists of approximately tens of thousands of persons whose data was compromised in Data Breach.

78.   <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.  Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' Private Information;

    b.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.  Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    d.  Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

    e.  Whether Defendant owed a duty to Class Members to safeguard their Private Information;

    f.  Whether Defendant breached their duty to Class Members to safeguard their Private Information;

    g.  Whether computer hackers obtained Class Members' Private Information in the Data Breach;

h. Whether Defendant knew or should have known that their data security systems and monitoring processes were deficient;

i. Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j. Whether Defendant's conduct was negligent;

k. Whether Defendant's conduct was *per se* negligent;

l. Whether Defendant's acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

m. Whether Defendant failed to provide notice of the Data Breach in a timely manner, and;

n. Whether Plaintiffs and Class Members are entitled to damages, treble damages, civil penalties, punitive damages, and/or injunctive relief.

79.     Typicality. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' information, like that of every other Class Member, was compromised in the Data Breach.

80.     Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions.

81.     Predominance. Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class

Members, as described *supra*, predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

82. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most class members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member.

83. Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

### FOR A FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiffs and All Class Members)

84. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 83 above, as if fully set forth herein.

85.    Defendant's Clients required Plaintiffs and Class Members to submit non-public personal information in order to obtain medical, educational, and other services.  Defendant had a duty to its Clients, Plaintiffs, and Class Members to securely maintain the Private Information collected.

86.    By accepting the duty to maintain and secure this data in its computer property, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Plaintiffs' and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach and/or ransomware attack.

87.    Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

88.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its Clients and Users, which is recognized by Defendants Policy Notice North America, as well as laws and regulations. Defendant was in a position to ensure that its systems

were sufficient to protect against the foreseeable risk of harm to Class Members from a ransomware attack and/or data breach.

89. Defendant had a specific duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

90. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

91. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of their networks and systems;

c. Failure to periodically ensure that their email system had plans in place to maintain reasonable data security safeguards;

d.    Allowing unauthorized access to Class Members' Private Information;

e.    Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

f.    Failing to timely notify Class Members about the Ransomware Attack so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

92.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members.  Further, the breach of security was reasonably foreseeable given the known high frequency of ransomware attacks and data breaches in the Clients' various industries.

93.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

94.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

95.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.:* (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## FOR A SECOND CAUSE OF ACTION
### INVASION OF PRIVACY
#### (On Behalf of Plaintiffs and All Class Members)

96.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 95, as if fully set forth herein.

97.     The State of California recognizes the common law tort of invasion of privacy, In *Diaz v. Oakland Tribune, Inc., et. al,* the appellate court accurately discerned the following elements of the public disclosure tort: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." 139 Cal.App.3d at 126, 188 Cal.Rptr. 762 (1983).

98.     Plaintiffs and Class Members had a reasonable expectation of privacy, and freedom from exposure, in the Private Information Defendant mishandled.

99.     Defendant's conduct as alleged above intruded upon Plaintiffs and Class Members' private aspects under common law.

100.    Defendant's intrusion was substantial and unreasonable enough to be legally cognizable, in that the reasonable expectation of persons of normal and ordinary sensibilities, including Plaintiffs, is that the Private Information disclosed to Defendant's Clients would be properly maintained and secured.

101.    By failing to keep Plaintiffs' and Class Members' Private Information safe, and by misusing and/or disclosing said information to unauthorized parties for

unauthorized use, Defendant intentionally invaded Plaintiffs' and Class Members' privacy by:

    a.    Intentionally and substantially intruding into Plaintiffs' and Class Members' private affairs in a manner that identifies Plaintiffs and Class Members and that would be highly offensive and objectionable to a reasonable person; and

    b.    Intentionally publicizing private facts about Plaintiffs and Class Members, which is highly offensive and objectionable to a reasonable person; and

    c.    Intentionally causing anguish or suffering to Plaintiffs and Class Members.

102.    Defendant knew that ordinary reasonable person in Plaintiffs' or a Class Member's position would consider Defendant's intentional actions highly offensive and objectionable.

103.    Defendant invaded Plaintiffs' and Class Members' right to privacy and intruded into Plaintiffs' and Class Members' private affairs by intentionally misusing and/or disclosing their Private Information without their informed, voluntary, affirmative, and clear consent.

104.    Defendant intentionally concealed from Plaintiffs and Class Members an incident that misused and/or disclosed their Private information without their informed, voluntary, affirmative, and clear consent.

105.   As a proximate result of such intentional misuse and disclosures, Plaintiffs' and Class Members' reasonable expectations of privacy in their Private Information was unduly frustrated and thwarted. Defendant's conduct amounted to a substantial and serious invasion of Plaintiffs' and Class Members' protected privacy interests causing anguish and suffering such that ordinary reasonable person would consider Defendant's intentional actions or inaction highly offensive and objectionable.

106.   In failing to protect Plaintiffs' and Class Members' Private Information, and in intentionally misusing and/or disclosing their Private Information, Defendant acted with intentional malice and oppression and in conscious disregard of Plaintiffs' and Class Members' rights to have such information kept confidential and private.  Plaintiffs, therefore, seeks an award of damages on behalf of himself and the Class,

<u>**FOR A THIRD CAUSE OF ACTION**</u>
**BREACH OF EXPRESS CONTRACT**
**(On Behalf of Plaintiffs and All Class Members)**

107.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 106 above, as if fully set forth herein.

108.   Plaintiffs and members of the Class allege that they were the direct or third-party beneficiaries of valid and enforceable express contracts, with Defendant (including, *inter alia*, Privacy Policy North America).

109.   In fact, Plaintiffs' Privacy Policy North America expressly extends to

any "constituent, supporter, patient or student of one of [Blackbaud's] customers…"[20]

110.   The valid and enforceable express contracts that Plaintiffs, Class Members, and Defendant's Clients entered into with Defendant include Defendant's promise to protect Private Information given to Defendant's Clients and otherwise maintained and secured by Defendant.

111.   Under these express contracts, Defendant promised and were obligated to protect Plaintiffs' and the Class Members' Private Information.  In exchange, Defendant's Clients, Plaintiffs, and members of the Class agreed to pay money for these services.

112.   The protection of Plaintiffs' and Class Members' Private Information were material aspects of these contracts.

113.   At all relevant times, Defendant expressly represented in its Privacy Policy North America as follows:

> While no website can guarantee exhaustive security, we maintain appropriate physical, electronic and procedural safeguards to protect your personal information collected via the website. We protect our databases with various physical, technical and procedural measures and we restrict access to your information by unauthorized persons. We also advise all Blackbaud employees about their responsibility to protect customer data and we provide them with appropriate guidelines for adhering to our company's business ethics standards and confidentiality policies.

---

[20] https://www.blackbaud.com/company/privacy-policy/north-america (Last Accessed August 12, 2020).

114.   Defendant's express representations, including, but not limited to, express representations found in its Privacy Policy, formed an express contract requiring Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class Members' Private Information.

115.   Consumers of healthcare and education, as well as non-profit donors, value their privacy, the privacy of their dependents, and the ability to keep their Private Information associated with healthcare, education, and other institutions private. To customers such as Plaintiffs and Class Members, maintenance and security of Private Information that does not adhere to industry standard data security protocols to protect Private Information is fundamentally less useful and less valuable than such services that adhere to industry-standard data security. Plaintiffs and Class Members would not have given Defendant's Clients and Defendants their Private Information, and otherwise entered into these contracts with Defendant and/or its Clients as a direct or third-party beneficiary without an understanding that their Private Information would be safeguarded and protected.

116.   A meeting of the minds occurred, as Plaintiffs and members of the Class provided their Private Information to Defendant and/or its affiliated Clients, and expected protection of their Private Information.

117.   Plaintiffs and Class Members performed their obligations under the contract, including when they paid for services provided by Defendants' Clients or otherwise donated money.

118.   Defendant materially breached its contractual obligation to protect the Private Information Defendant gathered when the information was accessed or exfiltrated by unauthorized personnel as part of the Data Breach.

119.   Defendant materially breached the terms of these express contracts, including, but not limited to, the terms stated in the relevant Privacy Policy. Defendant did not "maintain appropriate physical, electronic and procedural safeguards to protect your personal information," "protect [its] databases with various physical, technical and procedural measures and [we] restrict access to your information by unauthorized persons," or otherwise adequately train employees.

120.   Defendant did not comply with industry standards, or otherwise protect Plaintiffs' and the Class Members' Private Information, as set forth above.

121.   The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

122.   As a result of Defendant's failure to fulfill the data security protections promised in these contracts, Plaintiffs and Class Members did not receive the full benefit of the bargain, and instead received services that were of a diminished value to that described in the contracts.  Plaintiffs and Class Members therefore were damaged in an amount at least equal to the difference in the value of the services with data security protection they paid for and the services they received or provided.

123.   Had Defendant disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, the Plaintiffs, the Class Members, or any reasonable person would not have accepted or purchased services from Defendant and/or their Clients which required providing Private Information.

124.   As a direct and proximate result of the Data Breach, Plaintiffs and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release, disclosure, and publication of their Private Information, the loss of control of their Private Information, the imminent risk of suffering additional damages in the future, out-of-pocket expenses, and the loss of the benefit of the bargain they had struck with Defendant.

125.   Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

**FOR A FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and All Class Members)**

126.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 125 above, as if fully set forth herein.

127.   When Plaintiffs and Class Members provided their Private Information to Defendant and Defendant's Clients in exchange for Defendant and Defendant's Clients' services, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

128.   Defendant solicited and invited Class Members to provide their Private Information as part of Defendant's regular business practices, including through its Privacy Policy. Plaintiffs and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

129.   In entering into such implied contracts, Plaintiffs and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations, and were consistent with industry standards.

130.   Plaintiffs and Class Members accepted service from, and paid money to Defendant's Clients which was conferred upon Defendant, and through which Plaintiffs and Class Members reasonably believed and expected that Defendant would use part of those funds to maintain adequate data security.  Defendant failed to do so.

131.   Plaintiffs and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.  Plaintiffs and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

132.   Plaintiffs and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

133.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

134.    As a direct and proximate result of Defendant's breaches of the implied contracts, Class Members sustained damages as alleged herein.

135.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

136.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

### FOR A FIFTH CAUSE OF ACTION
### NEGLIGENCE *PER SE*
### (On Behalf of Plaintiffs and All Class Members)

137.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 136, above as if fully set forth herein.

138.    Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

139.    Pursuant to the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), Defendant had a duty to protect the security and confidentiality of Plaintiffs' and Class Members' Private Information.

140.   Defendant breached its duties to Plaintiffs and Class Members under the Federal Trade Commission Act and the Gramm-Leach-Bliley Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

141.   Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

142.   But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

143.   The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

144.   As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## FOR A SIXTH CAUSE OF ACTION
## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (UCL),
Cal. Bus. and Prof. Code § 17200 *et seq*.
### (On Behalf of Plaintiffs and All Class Members)

145.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 144 above, as if fully set forth herein.

146.   Defendant has violated **Cal. Bus. and Prof. Code § 17200** *et seq*. by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in **Cal. Bus. Prof. Code § 17200** with respect to the data services provided to Plaintiffs and Class Members.

147.   Plaintiffs and Class Members entrusted Defendant with their Private Information.

148.   Defendant stored the Personal Information of the Plaintiffs and Class Members on its data servers. Defendant knew or should have known they did not employ reasonable, industry standard, and appropriate security measures that complied "with federal regulations," which would have kept the Personal Information of the Plaintiffs and Class Members secure and prevented the loss or misuse of the Personal Information. Defendant became aware of breaches of its systems' security in May of 2020, but did not disclose to the Plaintiffs and Class Members that its data systems were not secure until August of 2020.

149.   Plaintiffs and Class Members were entitled to assume, and did assume, that Defendant would take appropriate measures to keep their Personal Information safe. Defendant was in sole possession of and had a duty to disclose the material information that Personal Information was vulnerable to hackers because Defendant's security measures were inadequate. Defendant did not disclose at any time that Personal Information was vulnerable to hackers.

150.   Defendant violated the UCL by misrepresenting, both by affirmative conduct and by omission, the safety of its many systems and services, specifically the security thereof, and its ability to safely store the Personal Information of the Plaintiffs and Class Members. Defendant also violated the UCL by failing to implement reasonable and appropriate security measures or follow industry standards for data security, and by failing to immediately notify Plaintiffs and Class Members that its systems had been breached and were insecure. If Defendant had complied with these legal requirements, Plaintiffs and Class Members would not have suffered the damages related to the Data Breach.

151.   In addition, Defendant engaged in unlawful acts and practices with respect to its services by failing to disclose the security breaches of its systems to the Plaintiffs and Class Members in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82. Aware that its systems' security was breached as of May 2020, Defendant did not provide any notice of a breach until August 2020. This delay in providing notice was unreasonable and resulted in

Personal Information being compromised, sold, or otherwise fraudulently used after the breach. Had the Plaintiffs and Class Members been provided reasonable notice that Defendant's systems had been breached and their Personal Information potentially exposed, the Plaintiffs and Class Members could have engaged in mitigation efforts, including, but not limited to, obtaining credit monitoring services.

152.   Furthermore, as alleged above, Defendant's failure to secure consumers' Personal Information violates the FTCA and therefore violates the UCL.

153.   Defendant did not afford Plaintiffs and Class Members equal or ample opportunity to make any inspection to determine Defendant's data security or to otherwise ascertain the truthfulness of Defendant's direct and indirect representations regarding data security, including its failure to alert customers that its data systems were not secure and, thus, were vulnerable to attack.

154.   Had Defendant disclosed to Plaintiffs and Class Members that its data systems were not secure and, thus, vulnerable to attack, Plaintiffs and Class Members would not have provided Personal Information to Defendant's clients.

155.   As a direct result of their reliance upon Defendant to be truthful in its disclosures and non-disclosures regarding the vulnerability of its POS and data systems, Plaintiffs and Class Members provided Defendant with Personal Information during the Data Breach period and after Defendant knew that its

systems had been breached by ransomware. As a result, Personal Information was compromised, causing the Plaintiffs and Class Members to suffer damages.

156.   As a direct result of Defendant's refusal to disclose that its data systems were not secure, Plaintiffs and Class Members:

    a.  entered into transactions costing money or property that they otherwise would not have entered into;

    b.  provided Personal Information that they otherwise would not have provided;

    c.  had the value of their Personal Information diminished;

    d.  had their Personal Information compromised, causing losses and damages, and were thereby deprived of money and property.

157.   As a direct and proximate result of Defendant's violation of the UCL, the Plaintiffs and Class Members suffered damages including, but not limited to: diminution of their Personal Information damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports, and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. In addition, their

Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

158.   As a direct and proximate result of Defendant's unlawful practices and acts, the Plaintiffs and Class Members were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their Personal Information, and additional losses described above.

159.   Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiffs' and Class Members' Personal Information and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and members of the Class.

160.   The Plaintiffs and Class Members seek relief under **Cal. Bus. & Prof. Code § 17200**, *et. seq.*, including, but not limited to, restitution to Plaintiffs and Class Members of money or property that Defendant may have acquired by means of its unlawful, and unfair business practices, disgorgement of all profits accruing

to Defendant because of its unlawful and unfair business practices as restitution, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

### FOR A SEVENTH CAUSE OF ACTION
**VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT (CCPA),**
CA CIVIL § 1798.100, *et seq.*
**(On Behalf of Plaintiffs and All Class Members)**

161.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 160 above, as if fully set forth herein.

162.   Defendant is a Business and/or Service Provider within the meaning of the CCPA.

163.   Defendant collects Personal Information which identifies, relates to, describes, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household, within the meaning of the CCPA.

164.   Plaintiffs are Consumers within the meaning of the CCPA.

165.   As a business that owns, licenses, and/or maintains Personal Information within the meaning of California Civil Code § 1798.81.5, Defendant had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information maintained, to protect the information from unauthorized access, destruction, use, modification, and disclosure. Defendant breached its duty by:

a. failing implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach and/or ransomware attack;

b. failing to provide data security consistent with industry standards and other requirements as previously discussed herein;

c. failing to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

166. Plaintiffs' names and Social Security numbers, which they were informed were stolen and/or otherwise disclosed as a result of the Data Breach, are personal information within the definition of California Civil Code § 1798.81.5, and Defendant's violation of its duty to maintain reasonable security procedures and practices with regard to their Personal Information was the direct and proximate cause of its theft and/or disclosure.

167. Plaintiffs and Class Members seek relief under the CCPA, California Civil Code § 1798.100, *et seq.* to recover statutory damages, injunctive or declaratory relief, and any other relief the court deems proper. in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.

168. On or about September 10, 2020, Plaintiffs provided written notice to Defendant via Certified Mail, Return Receipt Requested, of its violations of the

California Consumer Privacy Act ("CCPA"), California Civil Code § 1798.100, et seq. Plaintiffs will seek to amend this claim after Defendant responds to their requests as stated in the CCPA notice letter.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for judgment as follows:

a) For an Order certifying this action as a class action and appointing Plaintiffs and his Counsel to represent the Class;

b) For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

c) For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

d) For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e) Ordering Defendant to pay for not less than seven years of credit monitoring services for Plaintiffs and the Class;

f)  For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g)  For an award of punitive damages, as allowable by law;

h)  For an  award of statutory damages pursuant to California Civil Code § 1798.150 in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater;

i)  For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

j)  Pre- and post-judgment interest on any amounts awarded; and

k)  Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demands a jury trial on all issues so triable.

Dated: September 9, 2020

Respectfully submitted,

**WHITFIELD BRYSON LLP**

/s/ *Alex R. Straus*
Alex R. Straus (SBN 321366)
16748 McCormick Street
Los Angeles, CA 91436

Harper Todd Segui*
Matthew E. Lee*
Erin J. Ruben*
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
Fax: 919-600-5035
Email: alex@whitfieldbryson.com
         harper@whitfieldbryson.com
   matt@whitfieldbryson.com

*Counsel for Plaintiffs and The Class*

* *Pro Hac Vice Application to be submitted*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28